# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

TIMOTHY E. WHITEUS,

       Defendant-Appellant.

UNPUBLISHED
February 28, 2017

No. 329456
Ingham Circuit Court
LC No. 14-001097-FH

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

A jury convicted defendant of one count of conducting a criminal enterprise (racketeering), MCL 750.159i; five counts of violating the Medicaid False Claim Act (MFCA), MCL 400.601 *et seq.*; and 13 counts of violating the Health Care False Claim Act (HCFCA), MCL 752.1001 *et seq.* He was sentenced to concurrent prison terms of 2 to 20 years for racketeering and one to four years for each count of fraud. Defendant appeals, and for the reasons provided below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The charges against defendant are based on claims for reimbursement submitted to Medicare in defendant's name for podiatric services rendered by Golden Higgwe, whose medical license had been revoked in 2003 for having committed healthcare fraud. As a result of Higgwe's conviction, Higgwe's name appeared on the state list of sanctioned providers and on the federal list of excluded providers. Being on these lists meant that Higgwe was not allowed to bill for services to Medicaid or Medicare recipients, and claims could not be submitted by anyone else for services Higgwe performed. The lists of sanctioned and excluded providers are available online. Defendant acknowledged that he never checked the list of sanctioned and excluded providers; however, he maintained that neither the Medicaid Provider Manual nor the applicable laws and regulations required him to do so.

The defense theory was twofold: (1) defendant claimed that, under federal regulations, he was allowed to bill for Higgwe's services if they were rendered under defendant's supervision; and (2) defendant believed he could bill Medicaid for Higgwe's services because he had learned from a colleague that a state employee had told the colleague that Higgwe was allowed to work in Michigan.

-1-

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions. Claims that the evidence was insufficient to support a defendant's conviction are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). When considering a defendant's challenge to the sufficiency of the evidence, we review the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Consistent with this principle, an appellate court should "not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id*.

"Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Kosik*, 303 Mich App 146, 151; 841 NW2d 906 (2013). And "[i]t is for the trier of fact, rather than this Court, to determine what inferences can be fairly drawn from the evidence and to determine the weight to be afforded to the inferences." *Id.* at 150-151.

The common element that defendant challenges in all of his convictions is whether the prosecution established that, when he submitted claims for services Higgwe provided, he knew that they were false or fraudulent, particularly in light of the fact that defendant was not expressly required to check the online list of providers that were sanctioned or excluded from billing for services. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622.

Defendant was convicted of one count of racketeering under MCL 750.159i(1), which states, "A person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." "Racketeering" is defined by statute to specifically include committing Medicaid fraud under § 7 of the MFCA for financial gain. MCL 750.159g(f).

Defendant was also convicted of violating § 7(1) of the MFCA, which provides that "[a] person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false." MCL 400.607(1). MCL 400.602(f), in turn, defines "knowing" to mean

> that a person is in possession of facts under which he or she is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the payment of a medicaid benefit. Knowing or knowingly includes acting in deliberate ignorance of the truth or falsity of facts or

acting in reckless disregard of the truth or falsity of facts. Proof of specific intent to defraud is not required.

Defendant was further convicted of healthcare fraud under the HCFCA, which provides in relevant part that "[a] person shall not make or present or cause to be made or presented to a health care corporation or health care insurer a claim for payment of health care benefits knowing the claim to be false." MCL 752.1003(1). The HCFCA's definition for " '[k]nowing' or 'knowingly' means that a person is in possession of facts under which he or she is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the payment of a health care benefit." MCL 752.1002(h); see also *People v Perez-DeLeon*, 224 Mich App 43, 49; 568 NW2d 324 (1997) (applying these definitions).

Here, the prosecution presented evidence that during the relevant times, the Medicaid manual did not allow reimbursement for services rendered by sanctioned or excluded providers; that defendant signed a form in which he agreed to read and abide by the Medicaid manual, which provided that under federal law Medicaid would not provide reimbursement for services rendered or items prescribed "by sanctioned, suspended, terminated or excluded providers"; that defendant had agreed not to "knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare" and not to "submit claims with deliberate ignorance or reckless disregard of their truth or falsity"; that defendant knew that Higgwe was not just unlicensed but that his license had been revoked for committing healthcare fraud; that defendant knew a healthcare-fraud conviction could cause a person to be added to the list of sanctioned or excluded providers; and that defendant did not check the online database of excluded and sanctioned providers before directing his biller to submit claims for Higgwe's services, despite having access to a computer, Internet service, and assistance in using search engines.

Viewing this evidence in the light most favorable to the prosecution, a reasonable jury could have concluded beyond a reasonable doubt that, because defendant knew that Higgwe had been convicted of healthcare fraud and defendant had the ready means to ascertain whether Higgwe had been sanctioned or excluded as a result, defendant acted in deliberate ignorance of the fact that Higgwe was indeed barred from being reimbursed for providing services. Defendant's argument that he was not legally required to check the list of sanctioned and excluded providers has no bearing on whether the prosecution presented enough evidence to support defendant's convictions. The jury was entitled to consider the existence of the list and the ease of accessing it when deciding whether defendant had acted with deliberate ignorance.

The prosecution also presented evidence that defendant knew that submitting claims for Higgwe's services to Medicare would result in those claims being automatically forwarded to Medicaid for eligible patients. As a result, defendant's argument that he had instructed his biller not to submit claims to Medicaid did not render the evidence insufficient to support his conviction for violating the MFCA as well as the HCFCA.

In his Standard 4 brief, defendant argues that he did not knowingly submit false claims because he had been told by a colleague that, according to a state employee, Higgwe was eligible to provide services. However, the court excluded this testimony as irrelevant hearsay, a decision defendant also challenges on appeal. "Hearsay" is defined to be "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." It is true that, under some circumstances, the constitutional right to call witnesses in one's own defense may extend to the presentation of hearsay, as long as it is reliable. See, e.g., *Green v Georgia*, 442 US 95, 97; 99 S Ct 2150; 60 L Ed 2d 738 (1979); *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). In this case, there was no corroborating evidence of the alleged conversation, and the statement allegedly made to defendant's colleague served that colleague's own interest in avoiding prosecution for the same conduct. Accordingly, it did not bear the "persuasive assurance of trustworthiness" that would have allowed it to be admitted under the *Chambers* exception to the general rule against hearsay.

Moreover, assuming the testimony had been admitted, it would not have rendered the evidence against defendant insufficient because the prosecution was not required to "negate every reasonable theory of innocence," but rather was only required to "prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014).

Defendant also argues that the court erred when it failed to apply federal regulations, which allow an unlicensed person, like Higgwe, to provide the services as long as he is under the general supervision of a licensed doctor. However, Higgwe was not merely unlicensed—he was sanctioned and excluded. Federal law does not permit the reimbursement for Medicaid services provided by someone who is sanctioned and excluded, regardless of the level of supervision.

## B. SENTENCING

Defendant argues that the court violated the rule of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), when it scored offense variable (OVs) 14 and 16 based on facts neither admitted by him nor found by the jury.

In *Lockridge*, the Michigan Supreme Court held that the sentencing guidelines were unconstitutional to the extent they *required* a court to consider facts neither admitted by the defendant nor found by the jury when scoring offense variables that *mandatorily* increased a defendant's minimum sentence. *Id.* at 364. However, the Court rejected the notion that the proper remedy was to require juries to find the facts used to score all the OVs that were neither admitted by defendant nor found by the jury. *Id.* at 398. Instead, the Court held that making the sentencing guidelines advisory rather than mandatory would remedy the Sixth Amendment violation identified in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and its progeny.

As the *Lockridge* Court emphasized, its holding did not "undercut the requirement that the highest number of points possible must be assessed for all OVs, whether using judge-found facts or not." *Lockridge*, 498 Mich at 392 n 28. Indeed,

> [t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a mandatory minimum sentence range, which constitutional violation was remedied in *Lockridge* by making the guidelines *advisory*, not by eliminating judicial fact-finding. [*People*

*v Biddles*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 326140), slip op, pp 5-6.]

Here, defendant was sentenced on August 5, 2015, which was one week after *Lockridge* was decided. Although the sentencing court did not mention *Lockridge* by name, the transcript reflects that the sentencing court was aware of its effects, namely, that it had rendered the guidelines advisory, struck down the requirement that a substantial and compelling reason be given to justify a departure, and required only that the resulting sentence be reasonable. Therefore, defendant's claim that the trial court impermissibly engaged in judicial fact-finding during sentencing is without merit. The trial court acknowledged that the sentencing guidelines were now advisory, so "[t]he constitutional evil addressed by the *Lockridge* Court" was not present.

## C. SUPREMACY CLAUSE

Defendant argues in his Standard 4 brief that the differences between state and federal laws governing Medicaid indicate that the federal body of law should apply and that the state court is without jurisdiction to prosecute him for violating state law. This argument was considered and rejected by this Court in *Kanaan*, which held that "Congress clearly and expressly contemplated state Medicaid fraud prosecutions . . . under applicable state laws" and that Congress did not require state Medicaid laws to be "entirely consistent" with federal law. *Kanaan*, 278 Mich App at 614-615; see also *id*. at 602 (addressing subject-matter jurisdiction).

## D. PERJURY

Defendant also argues in his Standard 4 brief that prosecution witnesses who worked for Medicaid and Medicare gave false, incorrect, or perjured testimony that went uncorrected by the prosecutor. Because defendant failed to preserve this claim of prosecutorial misconduct by contemporaneously objecting to the challenged testimony and requesting a curative instruction, our review is for plain error affecting substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

In order to successfully present this issue for appeal, defendant was required to identify the factual basis supporting it. MCR 7.212(C)(7); *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). He failed to do so. He cites to the preliminary examination transcript, which has no bearing on an error allegedly occurring at trial. He also cites two pages of an unspecified transcript, and we have found nothing on the corresponding pages of any trial transcript that in any way touches upon his claim of prosecutorial misconduct. We also have found no signs anywhere in the record that indicate that any testimony procured by the prosecution was perjured. Thus, we deem the issue abandoned, and we will not address it further. See *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012).

## E. JURY INSTRUCTIONS

In his Standard 4 brief, defendant maintains that the court erred when it failed to sua sponte instruct the jury on various matters. We review each claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A criminal defendant is entitled to a properly instructed jury. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). This requires that the jury instructions include "all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003).

Defendant argues that the trial court erred when it failed to instruct the jury on the defense of entrapment. But because defendant has alleged no improper conduct on the part of police, see *People v Vansickle*, 303 Mich App 111, 115; 842 NW2d 289 (2013) (setting forth the elements of entrapment), a jury instruction on this defense would not have been warranted.

Defendant also asserts that the trial court erred when it failed to instruct on the defense of entrapment by estoppel, which "excuse[s] criminal conduct where a government agent has improperly instigated or encouraged the conduct." *People v Woods*, 241 Mich App 545, 555; 616 NW2d 211 (2000); see also *id.* at 558-559 (stating that one element of entrapment by estoppel includes "a government official" having informed the defendant that certain criminal conduct was legal). However, defendant does not allege that a government official told him it was legal to bill for Higgwe's services. Instead, he alleges that a government official told *a colleague* it was legal, and then that colleague relayed that conversation to defendant, who supposedly relied on that information. But defendant cites no authority that would extend this doctrine to allow the government official's statements to a third person to be considered as being said to defendant.

Defendant further argues that the trial court erred when it failed to instruct the jury on issues relating to delegation and supervision, the differences between federal and state laws regarding supervision, and federal versus state jurisdiction. However, as we have previously noted, because Higgwe was not just unlicensed but was also sanctioned and excluded, Higgwe was not eligible to be reimbursed for services provided to Medicare or Medicaid patients under any level of supervision. Therefore, the differences between state and federal law regarding the level of supervision defendant would have been required to exercise over an eligible unlicensed provider were irrelevant.

Defendant also claims that the trial court failed to instruct the jury to examine "the totality of the circumstances" regarding each element of the alleged crime and also failed to properly instruct the jury on "exclusion," by which defendant apparently means the methods he could have used to ascertain whether Higgwe was an excluded provider. We view the crux of these arguments to be that the jury was not properly instructed on whether defendant knew that he could not bill for Higgwe's services because he was not required to check the online list of excluded and sanctioned providers and had been told by a colleague that Higgwe could work under supervision. However, the record reflects that the jury was instructed about what the prosecution was required to prove with regard to defendant's knowledge, including the applicable statutory definitions. The jury was also instructed that, with regard to the fraud claims, "knowing" could mean acting in deliberate ignorance of the truth and was further

instructed that the prosecution was not required to show that defendant acted with a specific intent to defraud. Because these instructions accurately described the "knowing" elements of the charged offenses, defendant has not established a basis for relief.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan