PEOPLE v WOODS

Docket No. 220760. Submitted February 1, 2000, at Grand Rapids. Decided June 27, 2000, at 9:00 A.M.

Robert Woods, Jr., was bound over to the Saginaw Circuit Court on an information charging him with one count of receiving absentee ballots while ineligible to do so by reason of his and his brother's candidacy for office, one count of tampering with absentee ballots, and three counts of possession of absentee ballots. The information was the result of the multicount indictment handed down by a one-man grand jury that had been convened to investigate illegal conduct in the primary election held in 1996 in Buena Vista Township, Saginaw County. The defendant was a county commissioner that was seeking unopposed reelection to that office, and his brother was seeking reelection to the office of township trustee in a contested race. Testimony before the grand jury established that about thirty days before the primary election the defendant asked the township clerk if he could serve as an election assistant. Despite the fact that the defendant was ineligible to be appointed as an election assistant by reason of his and his brother's candidacies, the township clerk prepared and signed an election assistant card for the defendant, administered an oath to the defendant, and gave the defendant a number of absentee voter applications; however, the clerk failed to fill out the necessary oath of office certificate. The defendant filed a pretrial motion in which he raised the defense of "entrapment by estoppel" on the basis that he allegedly had relied in good faith on the township clerk's representation that the defendant was eligible to act as an election assistant and in which he sought a jury instruction regarding the defense of entrapment by estoppel. The court, Robert L. Kaczmarek, J., without holding an evidentiary hearing concerning the allegation of entrapment but rather relying on the defendant's grand jury testimony that had been admitted as an exhibit at the preliminary examination, denied the defendant's request for an entrapment jury instruction, but stayed proceedings to allow the defendant to seek an interlocutory appeal. The defendant appealed by leave granted.

The Court of Appeals held:

1. The defendant contends that entrapment is a question for the jury and, thus, the trial court erred in denying his request for a jury

instruction regarding entrapment by estoppel. The defendant's contention that entrapment is a jury question is inconsistent with Michigan procedure. When a defendant claims entrapment, the trial court must conduct a separate evidentiary hearing to resolve the issue, with the defendant bearing the burden of proof. Ultimately, the question of entrapment is a question of law for the court to decide, not a question of fact for jury resolution.

2. The procedural requirement of a separate pretrial evidentiary hearing that is applicable to the ordinary entrapment defense applies as well to the defense of entrapment by estoppel. Accordingly, because the trial court did not conduct an evidentiary hearing with respect to the claim of entrapment by estoppel, but rather relied on the grand jury testimony, the matter must be remanded for the necessary evidentiary hearing.

3. The defense of entrapment by estoppel, while rarely available, is based on the due process principle of fairness to a well-intentioned citizen who unwittingly breaks the law while relying on the statements of a government agent under circumstances where reliance is reasonable.

4. The defense of entrapment by estoppel applies where the defendant establishes by a preponderance of the evidence that a government official told the defendant that certain criminal conduct was legal, that the defendant actually relied on the government official's statements, that the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement, and that because of that reliance the prosecution of the defendant would be unfair.

Reversed and remanded.

1. CRIMINAL LAW — ENTRAPMENT — EVIDENTIARY HEARINGS.

The question whether there has been entrapment is a question of law for a court to decide, not a question of fact for jury resolution; when the defense of entrapment has been raised, a trial court must conduct a separate evidentiary hearing to resolve the issue, with the defendant bearing the burden of proof.

2. CRIMINAL LAW — ENTRAPMENT — ENTRAPMENT BY ESTOPPEL — EVIDENTIARY HEARINGS.

The procedural requirement of a separate pretrial evidentiary hearing that is applicable to the ordinary entrapment defense applies as well to the defense of entrapment by estoppel.

3. CRIMINAL LAW — ENTRAPMENT — ENTRAPMENT BY ESTOPPEL — ELEMENTS.

The defense of entrapment by estoppel applies where the defendant establishes by a preponderance of the evidence that a government official told the defendant that certain criminal conduct was legal, that the defendant actually relied on the government official's statements, that the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement, and that because of that reliance the prosecution of the defendant would be unfair.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Amy M. Ronayne*, Assistant Attorney General, for the people.

*Thick & Bush* (by *George C. Bush*), for the defendant.

Before: FITZGERALD, P.J., and SAAD and WHITBECK, JJ.

SAAD, J.

I. NATURE OF THE CASE

This interlocutory appeal raises an issue of first impression under Michigan law: May a sophisticated elected official escape criminal culpability for election fraud by claiming reliance on another elected official's representation that the charged conduct is legal? Defendant here involved himself in the distribution and collection of absentee ballots in an election where he and his brother were on the ballot—conduct that is illegal for reasons that are obvious even to the unsophisticated voter. Because he allegedly tainted the 1996 primary election in Buena Vista Township, defendant now faces trial on various felony and misdemeanor charges of election law offenses that undermine the democratic process of free and fair elections. See MCL 168.764b(3); MSA

6.1764(2)(3) (candidate or family member of candidate delivering absentee voter ballots), MCL 168.931; MSA 6.1931 (unauthorized handling of absentee ballots), MCL 168.932(e); MSA 6.1932(e) (absentee ballot tampering), and MCL 168.932(f)(i) and (ii); MSA 6.1932(f)(i) and (ii) (unauthorized possession of absentee ballot). Defendant maintains, however, that he should be absolved from blame under the doctrine of entrapment by estoppel because the elected official charged with appointing election assistants, township clerk Willie Jenkins (also a candidate on the 1996 ballot), allowed defendant to participate in the absentee ballot process. Defendant claims that he cannot be held culpable for his actions because Jenkins represented that defendant could legally act as an election assistant.

Though Michigan appellate courts have not applied the doctrine of entrapment by estoppel, the federal courts have applied this defense where a citizen has reasonably relied on a government agent's erroneous representation that certain conduct was legal, such that prosecution would be unfair under the circumstances. *Raley v Ohio*, 360 US 423; 79 S Ct 1257; 3 L Ed 2d 1344 (1959); *United States v Levin*, 973 F2d 463 (CA 6, 1992). We recognize that entrapment by estoppel—which is really a variation on the conventional entrapment defense—may, in certain limited circumstances, preclude prosecution. When a citizen reasonably and in good faith relies on a government agent's representation that the conduct in question is legal, under circumstances where there is nothing to alert a reasonable citizen that the agent's statement is erroneous, basic principles of due process should preclude prosecution. However, when a citizen who

should know better unreasonably relies on the agent's erroneous statement, or when the "statement" is not truly erroneous, but just vague or contradictory, the defense is not applicable.

## II. FACTS AND PROCEEDINGS

Defendant is a resident of Buena Vista Township in Saginaw County, where he has held the office of county commissioner for Saginaw County. Defendant faced reelection in 1996, but his candidacy for reelection was unopposed. Defendant's brother, James Woods, a township trustee for Buena Vista Township, also faced reelection in 1996. James Woods was challenged by another candidate. A local primary election was scheduled for August 6, 1996.

In July 1996, defendant decided that he wanted to act as an election assistant in the primary election by delivering absentee ballot applications to voters and collecting the completed absentee ballots from the voters. Defendant was aware that the state Legislature had recently amended the statutes governing the conduct of elections, including the handling of absentee ballots. Approximately thirty days before the primary, defendant contacted Buena Vista Township Clerk Willie Jenkins and asked Jenkins if he could serve as an election assistant. Because defendant and his brother were candidates on the ballot, defendant's assistance in the election was illegal under a clear and unambiguous statutory provision in effect since 1954. MCL 168.764b; MSA 6.1764(2). Defendant contacted Jenkins with the purpose of "pick[ing] up absentee ballots and get[ting] permission or sworn in or whatever you have to do to be able . . . to be legalized to present those ballots." Defendant stated that

he "just felt like I needed some type of authorization or something to do it." In his testimony before the grand jury, defendant gave the following account of his contact with Jenkins:

> *Q*: So you went to him and asked him whether—whether you could be deputized in some manner?
>
> *A*: Yes, and just to talk to him about procedure, how do you go about it, what do you do and how do you—how do you do it.
>
> \*          \*          \*
>
> *Q*: What happened then, you went there, you explained to him—
>
> *A*: Yeah, and that's when we talked and I picked up the applications, and I talked to him about deputizing or whatever you have to do. And I guess in the end result, I had to be deputized. That's the way the conversation went.
>
> And he gave me this card that he got, and signed it when I left, and left with the ballots.
>
> \*          \*          \*
>
> *Q*: You said that you and Mr. Jenkins had a conversation about what your duties were or what you could or couldn't do. What did he tell you about what you could or couldn't do?
>
> *A*: We didn't discuss that.
>
> \*          \*          \*
>
> *Q*: Mr. Woods, what I'm interested in knowing is what he told you about what you could and could not do.
>
> *A*: I really couldn't—I don't—I couldn't remember that. I couldn't recall the conversation of what he told me I could and could not do. I don't—I don't know.
>
> *Q*: Did he tell you what you could and could not do?
>
> *A*: I can't recall. You know, we talked, but to specifically what he said the do's and don'ts, I couldn't remember.

During this meeting with defendant, Jenkins prepared and signed an election assistant card and administered an oath, with no witnesses present. Jenkins then gave defendant 150 absentee voter applications. Jenkins failed to fill out the necessary oath of office certificate.

Jenkins violated MCL 168.764b; MSA 6.1764(2) when he permitted defendant to assist in the absentee ballot procedures. The statute states: "A person shall not be appointed as an assistant to accept delivery of absent voter ballots who is a candidate, or a member of the immediate family of a candidate, appearing on the ballot at that election." MCL 168.764b(3); MSA 6.1764(2)(3). The statute makes no exception for candidates who run unopposed. The current version of these statutory requirements have been in place since 1954.[1] Furthermore, MCL 168.931(1)(b)(iv); MSA 6.1931(1)(b)(iv) prohibits unauthorized persons from distributing absent voter ballot applications to voters and receiving signed ballots from voters for delivery to the appropriate clerk or clerk's assistant. Additionally, MCL 168.932(f); MSA 6.1932(f) prohibits persons other than absentee voters, family members of absentee voters, authorized postal carriers, and municipal clerks from possessing or returning absent voter ballots.

Defendant testified that he visited the homes of several of his acquaintances, mostly elderly township residents, distributed the absentee ballot applications,

---

[1] The 1996 amendments that defendant heard about do not relate to candidates or family members of candidates delivering and receiving applications and ballots; rather, they specify conditions for the collection of ballots from voters. MCL 168.764b(4) and (5); MSA 6.1931(2)(4) and (5).

and later collected the completed absentee ballots and returned them to Maxine King, deputy township clerk, at the township office. Defendant denied ever delivering the ballots themselves to anyone's home. However, several residents testified that defendant brought the ballots to their homes, and picked up unsealed, semi-completed ballots from their homes. At least two residents testified that they did not make all the marks and writings on applications and absentee ballots that defendant returned to the township office. One resident testified that defendant filled out the ballot for her *after she threw it in the wastebasket*.

In October 1996, the county prosecutor convened a one-person grand jury to investigate allegations of illegal conduct in the primary election. Defendant testified before the grand jury about his activity as an election assistant in the primary. The grand jury returned a seven-count indictment: (I) receiving absentee ballots when he was ineligible to do so because of his own candidacy and the candidacy of his brother, MCL 168.764b and 168.931; MSA 6.1764(2) and 6.1931; (II) absentee ballot tampering, MCL 168.932(e) and 168.935; MSA 6.1932(e) and 6.1935; and (III-VII), five counts of possession of absentee ballots, MCL 168.932(f)(i) and (ii) and 168.935; MSA 6.1932(f)(i) and (ii) and 6.1935. Defendant was subsequently charged by information with these charges, minus two counts of possession of absentee ballot.

Township clerk Jenkins and deputy township clerk Maxine King were also indicted by the grand jury after it became apparent that King prepared an oath of office certificate on October 31, 1996 (the date of Jenkins' grand jury testimony) but falsely dated it

July 9, 1996. (This document should have been com-
pleted and signed at the time defendant was
appointed election assistant.) The grand jury indicted
Jenkins of obstruction of justice (for fabricating the
oath of office certificate), conspiracy to commit
obstruction of justice (also for fabricating the certifi-
cate), improperly appointing an election official, and
failure to perform the duties of his office. King was
indicted as a co-conspirator for her role in fabricating
the certificate. Neither Jenkins nor King was indicted
on any conspiracy charge relating to the appointment
of defendant as an election assistant. Defendant also
has not been indicted for conspiracy. Jenkins was
convicted and currently has an appeal pending before
this Court.[2] The record is not clear with respect to the
outcome of the charge against King.

Following a preliminary examination, defendant
was bound over for trial on the election fraud
charges. On June 15, 1999, defendant argued in a pre-
trial motion that he was entitled to raise the defense
of "entrapment by estoppel" because he allegedly
relied in good faith on Jenkins' representation that
defendant was eligible to act as an election assistant.
Defendant contended that he was entitled to a jury
instruction with respect to the defense of entrapment
by estoppel. The trial court did not hold an eviden-
tiary hearing on entrapment, but instead relied on
defendant's grand jury testimony (which had been
admitted as an exhibit at the preliminary hearing).
The trial court denied defendant's request for this jury
instruction, but stayed proceedings to allow defend-

---

[2] Jenkins' appeal was argued before the Court in April 2000, and a deci-
sion in that matter is pending.

ant to file an interlocutory appeal in this Court. We granted defendant leave to appeal the trial court's denial of this jury instruction.

### III. ANALYSIS

#### A. ENTRAPMENT DEFENSE PROCEDURES IN MICHIGAN

Defendant seeks to raise the defense of entrapment by estoppel. The theory of this defense is that if a citizen unwittingly commits an unlawful act because of reasonable reliance on the word of a government agent, the conduct is lawful and the citizen ought not to be prosecuted. *Levin, supra.* There is no published Michigan case concerning the defense of entrapment by estoppel.

This Court granted defendant leave to make an interlocutory appeal of the trial court's decision denying his request for a jury instruction on entrapment by estoppel. Defendant's procedural contention, that entrapment is a question for the jury, is inconsistent with Michigan procedure on the defense of entrapment. When an accused claims entrapment, the trial court must conduct a separate evidentiary hearing to resolve the issue. *People v Juillet*, 439 Mich 34, 61; 475 NW2d 786 (1991) (opinion of BRICKLEY, J.); *People v Jamieson*, 436 Mich 61, 80; 461 NW2d 884 (1990). At an entrapment hearing, the defendant bears the burden of proving entrapment by a preponderance of the evidence. *People v Griffin*, 187 Mich App 28, 30; 466 NW2d 712 (1991). Ultimately, in Michigan, entrapment is a question of law for the trial court to decide, not a question of fact for the jury to resolve. *People v Jones*, 203 Mich App 384, 386; 513 NW2d 715

(1994); *People v Sammons,* 191 Mich App 351, 360; 478 NW2d 901 (1991).

"This Court reviews a trial court's finding concerning entrapment under the 'clearly erroneous' standard." *People v Connolly,* 232 Mich App 425, 428; 591 NW2d 340 (1998). "The trial court's findings are clearly erroneous if, after review of the record, this Court is left with a firm conviction that a mistake has been made." *Id.*

We believe that the pretrial evidentiary hearing procedure for ordinary entrapment applies to entrapment by estoppel as well. We note that entrapment by estoppel is simply a variation on ordinary entrapment. Ordinary entrapment is found where either (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated. *People v Ealy,* 222 Mich App 508, 510; 564 NW2d 168 (1997). The first prong of ordinary entrapment is substantially similar to entrapment by estoppel. Both defenses excuse criminal conduct where a government agent has improperly instigated or encouraged the conduct. Accordingly, we conclude that the procedure for determining a claim of ordinary entrapment applies also to a claim of entrapment by estoppel.

Here, the trial court heard arguments on the issue of entrapment by estoppel, but did not hold an evidentiary hearing. Rather, the trial court relied on the grand jury testimony that had been admitted as an exhibit at the preliminary examination. The trial court erred in not holding an entrapment hearing. *Juillet, supra; Jamieson, supra.* Though defendant's entrapment defense appears specious on its face, we none-

theless hold that such a hearing should have been held to thoroughly explore all facets of the defense. Therefore, we remand this matter for an evidentiary hearing. However, in order to provide guidance to the trial court in this case, and the bench and bar in general, we provide the following analysis of the defense of entrapment by estoppel.

### B. ENTRAPMENT BY ESTOPPEL: GENERAL PRINCIPLES

The origins of the defense of entrapment by estoppel are found in the Justice Brennan's opinion in *Raley v Ohio, supra,* 360 US 423. In *Raley,* the defendants were called before the Ohio State Legislature's Un-American Activities Commission to testify about subversive activities in the labor movement. *Id.,* p 427. Throughout the proceedings, the three witnesses asserted their constitutional privilege against self-incrimination with respect to particular questions asked. *Id.* On each of these occasions, the chairman either moved on to another question or advised the witnesses that the privilege applied to only certain questions. *Id.* For example, the chairman told defendant Raley that he could not assert the privilege with respect to whether a particular interview took place, but that he could refuse to answer questions about the content of the interview. *Id.,* pp 427-431. Subsequently, the defendants were indicted, and then convicted, for refusal to answer certain of the commission's questions. *Id.,* pp 432-433. After the state appellate and supreme courts affirmed the convictions, the United States Supreme Court reversed. *Id.,* pp 424-

425. The United States Supreme Court[3] rejected the state's contention that the convictions were proper because the privilege did not apply to the state house proceedings:

> While there is no suggestion that the Commission had any intent to deceive the appellants, we repeat that to sustain the judgment of the Ohio Supreme Court on such a basis after the Commission had acted as it did would be to sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him. A State may not issue commands to its citizens, under criminal sanctions, in language so vague and undefined as to afford no fair warning of what conduct might transgress them. [*Id.*, p 438 (citations omitted).]

The Court reversed the convictions of all but one of the defendants. *Id.*, p 442.

The due process principle underlying the doctrine of entrapment by estoppel is fairness to a well-intentioned citizen who unwittingly breaks the law while relying on government agents' statements under circumstances where reliance is reasonable. The defense is "rarely available." *United States v Howell*, 37 F3d 1197, 1204 (CA 7, 1994). "In essence, it applies when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official." *Id.*

---

[3] Only eight members of the Court participated in the *Raley* decision. All eight agreed to reverse convictions of three of the four defendants in the case. The justices were evenly divided concerning whether to affirm the fourth defendant's conviction, and so affirmed it. The four justices who favored affirming did not, however, disagree with Justice Brennan's reasoning in the lead opinion.

C. ENTRAPMENT BY ESTOPPEL: ELEMENTS OF DEFENSE

Defendant here relies on *Levin, supra,* p 488, wherein the Court of Appeals for the Sixth Circuit articulated the elements of the entrapment by estoppel defense as follows:

> To determine the availability of the defense, the court must conclude that (1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was reasonable; and (4) given the defendant's reliance, the prosecution would be unfair. *United States v Smith,* 940 F2d 710 (CA 1, 1991).

Other federal circuit courts of appeals, however, have offered a more comprehensive and precise articulation of these elements. For example the Court of Appeals for the Third Circuit states:

> [T]he entrapment by estoppel defense applies where the defendant establishes by a preponderance of the evidence that (1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement. [*United States v West Indies Transport, Inc,* 127 F3d 299, 313 (CA 3, 1997).]

The second and tenth circuits have articulated the entrapment by estoppel elements in the same manner as the third circuit. See *United States v Abcasis,* 45 F3d 39, 43 (CA 2, 1995); *United States v Nicholas,* 21 F3d 1016, 1018 (CA 10, 1994).

We prefer the articulation of the entrapment by estoppel elements as stated by the courts in *West*

*Indies, Abcasis,* and *Nicholas,* because we believe that this articulation will lead to a more accurate and precise application of the entrapment by estoppel defense. We note that while the sixth circuit's pronouncement on entrapment by estoppel is not strictly identical in substance to the *West Indies* court's statement, the articulations of the elements in the two cases are similar. Elements 1 and 2 of the *West Indies* court's test offer a more explicit alternative to the sixth circuit's element 1. Instead of referring in general terms to a "government announcement," as does sixth circuit element 1, the *West Indies* court specifies the *source* of the misinformation the defendant received (a government official) and the *content* of that misinformation (that "certain criminal conduct" was legal). The sixth circuit's element 2 and the *West Indies* court's element 3 both state the reliance requirement. However, whereas the sixth circuit's element 3 merely states that the defendant's reliance must be "reasonable," the *West Indies* court's element 4 adds a good-faith requirement and offers more specific direction on applying the reasonableness element: the defendant's reliance must be reasonable "in light of the identity of the government official, the point of law represented, and the substance of the official's statement." However, the *West Indies* court's test does not include the element of unfairness contained in the sixth circuit's pronouncement. This element is an important part of the analysis. Thus, although we adopt the *West Indies* court's entrapment by estoppel test, we include in that test the last element from the sixth circuit's analysis: that given the defendant's reliance, the prosecution would be unfair.

We believe that the *West Indies* court's articulation of the entrapment by estoppel elements, modified in

the fashion set forth above, provides a precise and efficacious way of implementing the jurisprudential principles behind the defense. The defense is, in essence, a significant exception to the basic legal maxim that ignorance of the law is no excuse. *United States v Etheridge*, 932 F2d 318, 321 (CA 4, 1991); *People v Turmon*, 417 Mich 638, 657; 340 NW2d 620 (1983), citing 4 Blackstone, Commentaries, p 27. Accordingly, the defense should be utilized only where an earnest, law-abiding citizen attempts in good faith to comply with the law by consulting an appropriate government official, but unfortunately receives misinformation. *West Indies, supra*, p 313, n 13. These are the circumstances where prosecution would be so unfair as to violate the citizen's right to due process. However, when the citizen knows or should know better, but attempts to seek immunity by claiming reliance on misinformation obtained from a government employee, prosecution is not unfair and estoppel by entrapment should have no application. The *West Indies* court's emphasis on greater specificity offers a more effective and reliable means of avoiding abuse of the entrapment by estoppel defense.

### D. CONCLUSION

We remand this matter to the trial court for an entrapment hearing where defendant will have an opportunity to present evidence on the elements of the entrapment by estoppel defense adopted herein.[4]

---

[4] We note that it appears that the trial court erred in finding that the township clerk was not the type of governmental official on whom defendant could reasonably rely. MCL 168.347; MSA 6.1347 imposes on township clerks the duties of the county clerk with respect to township

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

primary elections. MCL 168.759; MSA 16.1759 authorizes township clerks to process absentee ballots and applications. Accordingly, we believe that Jenkins had sufficient authority to satisfy the first element of the entrapment by estoppel defense.