# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERENCE MITCHELL BRUCE,

        Defendant-Appellant.

UNPUBLISHED
October 5, 2017

No. 331232
Jackson Circuit Court
LC No. 15-004687-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STANLEY LYLE NICHOLSON,

        Defendant-Appellant.

No. 331233
Jackson Circuit Court
LC No. 15-004688-FH

---

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

BORRELLO, J. (*dissenting*).

Contrary to the majority's conclusion that defendants were not "public officers," and therefore could not be convicted of misconduct in office, I would conclude that, pursuant to *People v Coutu*, 459 Mich 348; 589 NW2d 458 (1999), defendants qualify as "public officers" for purposes of the misconduct in office offense. Therefore I would conclude that the trial court properly denied defendants' motions to dismiss and motion for a directed verdict. Accordingly, I respectfully dissent.

My colleagues in the majority have aptly stated the facts and standard of review; I therefore proceed by addressing the parties' legal arguments.

## I. MISCONDUCT IN OFFICE

"[T]he elements of the common-law offense of misconduct in office are (1) the person must be a public officer, (2) the conduct must be in the exercise of the duties of the office or done under the color of the office, (3) the acts were malfeasance or misfeasance, and (4) the acts

must be corrupt behavior." *People v Carlin (On Remand)*, 239 Mich App 49, 64; 607 NW2d 733 (1999). The majority concludes that defendants were not "public officers" at the time of the offense and therefore the trial court erred in denying defendants' motions to dismiss and motions for a directed verdict. However, the majority erroneously reads "public officer" to exclude a federal agent acting under the color of state law at the time of the offense.

Our Supreme Court has set forth five elements to determine whether an individual's position qualifies as a "public officer":

> (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature;
>
> (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public;
>
> (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the legislature or through legislative authority;
>
> (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body;
>
> (5) it must have some permanency and continuity, and not be only temporary or occasional. [*Coutu*, 459 Mich at 354 (quotation marks and citation omitted).]

Additionally, oath and bond requirements are "of assistance in determining whether a position is a public office." *Id*. at 355.

Before trial, defendants moved to dismiss the charge of misconduct in office. They asserted that they did not meet the first element under *Coutu* because neither the Michigan Constitution nor the Michigan Legislature created their positions as federal border patrol agents. The state countered and relied on MCL 764.15d, which provides in pertinent part as follows:

> (1) A federal law enforcement officer may enforce state law to the same extent as a state or local officer only if all of the following conditions are met:
>
> (a) The officer is authorized under federal law to arrest a person, with or without a warrant, for a violation of a federal statute.
>
> (b) The officer is authorized by federal law to carry a firearm in the performance of his or her duties.

(c) One or more of the following apply:

* * *

(*iii*) The officer is participating in a joint investigation conducted by a federal agency and a state or local law enforcement agency.

(*iv*) The officer is acting pursuant to the request of a state or local law enforcement officer or agency.

* * *

(2) Except as otherwise provided in subsection (3), a federal law enforcement officer who meets the requirements of subsection (1) has the privileges and immunities of a peace officer of this state.

The state argued that as federal law enforcement officers, defendants could enforce state law to the same extent as a state police officer under certain applicable conditions, and that they were entitled to all the privileges and immunities of a state peace officer. Moreover, plaintiff argued that the Michigan State Police, whose task force defendants joined in the execution of the warrant, were an agency created by the Michigan Constitution or Legislature, or, at a minimum, that defendants were agents of the Michigan State Police.

The trial court agreed that defendants could enforce Michigan law while executing the search warrant under MCL 764.15d. The trial court thereafter denied the motion for dismissal, holding that defendants acted "under the color of State Police powers" as agents of the State Police because they were in a "joint venture" during the execution of the search warrant. At the close of trial, the trial court denied defendants' motion for a directed verdict, holding that a jury could determine whether defendants were public officers when viewing the evidence in the light most favorable to the prosecution.

Applying the factors set forth above in *Coutu*, I would conclude that the trial court did not err in denying defendants' motions to dismiss and for a directed verdict because defendants qualified as public officers at the time they were members of the "Hometown Security Team" (HST), a joint task force comprised of members of the Michigan State Police, motor carrier officers, and federal border patrol agents.

The first factor concerns whether the position was "created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature." *Coutu*, 459 Mich at 354-355. Here, the majority notes that the word "the" is a definite articular and concludes that,

[b]ecause 'the' appears before these singular nouns, it is clear that the phrase 'created by the Constitution or by the legislature' contemplated *one* Constitution and *one* legislature. And, because the phrase was drafted by the Michigan Supreme Court, applying Michigan law, reason dictates that 'the Constitution and 'the' legislature contemplated were those of Michigan. [*Ante* at 5.]

-3-

However, there is nothing in the text of the *Coutu* opinion indicating that the words "constitution" and "legislature" refer exclusively to the *state* constitution and the *state* legislature. Moreover, even assuming that *Coutu* referred exclusively to the state constitution and state legislature, here, at the time of the charged offense, defendants were in positions that were created by the state legislature.

The majority concludes that defendants were border patrol agents and that these border patrol positions were not created by the state legislature or the state constitution. However at the time the offenses were committed, defendants were serving as members of the HST—a task force that was authorized by the Legislature. The only legal mechanism by which federal officers (in this case border agents) can operate under state law is by a statute conferring state authority upon them. In this case, MCL 764.15d permits "federal law enforcement officer[s] [to] enforce state law to the same extent as a state or local officer." Thus, the Legislature crafted a law that permits federal law enforcement officers to act under the color of state law to the same extent as state or local officers under certain circumstances such as part of a joint federal-state investigation. See MCL 764.15d(1)(c)(*iii*)-(*iv*). Hence at the time of the offenses, defendants were operating not as border patrol agents but as part of a joint task force. The only way defendants could participate in the joint task force was by state statute, MCL 764.15d. The majority fails to address the impact that MCL 764.15d has on whether the federal officers, at the time the offense was committed, were acting in law enforcement positions—i.e. HST members—that were created by the Legislature pursuant to the statutory authorization under MCL 764.15d.

Contrary to the majority, I would therefore conclude that under the first factor set forth in *Coutu*, that at the time the offense was committed, the officers were acting in a position that was created by the Legislature pursuant to the legislative authority conferred under the Michigan Constitution.

Next, I would examine the other *Coutu* factors to determine whether defendants were public officers at the time of the offenses.

The second factor provides that the position in question "[m]ust possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public. . . ." *Coutu*, 459 Mich at 354-355. Here, in permitting certain federal law enforcement officers to participate in state law enforcement actions in certain circumstances, MCL 764.15d delegates a portion of sovereign power of government to federal officers such as defendants. By acting in the joint task force, defendants were permitted to "enforce state law to the same extent as a state or local officer. . . ." MCL 764.15d(1). Thus, defendants were exercising the sovereign power of the state government for the benefit of the public. See e.g. *Tzatzken v City of Detroit*, 226 Mich 603, 608; 198 NW2d 214 (1924) ("[police officers] act for the state in its sovereign capacity").

The third factor concerns whether "the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the legislature or through legislative authority." *Coutu*, 459 Mich at 354-355. Here, the powers conferred and the duties to be discharged while defendants were acting as HST members were governed, in part, by MCL 764.15d, which governs the parameters as to when a federal law enforcement officer may enforce state law, and

provides that the officer may enforce state law "to the same extent as a state or local officer." In addition, the statute provides that, when a federal officer qualifies under the statute, the officer "has the privileges and immunities of a peace officer of this state." MCL 764.15d(2). Thus, the powers conferred to defendants and duties to be discharged in relation to the task force were defined by the Legislature through its legislative authority.

The fourth factor provides that the "duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body. . . ." *Coutu*, 459 Mich at 354-355. Here, by acting as part of a state-federal task force, defendants' duties were controlled and governed by the law—i.e. MCL 764.15d. Furthermore, to the extent that defendants were inferior or subordinate to other officers in the task force, those positions were created by the Legislature under MCL 764.15d.

The fifth factor provides that the position must "have some permanency and continuity, and not be only temporary or occasional." *Coutu*, 459 Mich at 354-355. Here, the position in which defendants were in—i.e. HST members—was not a temporary or occasional positon. Instead, the state and federal government continually participate in joint operations and, given defendants' status as border patrol agents, defendants were eligible to participate in future joint operations.

The sixth factor concerns whether the position contains an oath. *Coutu*, 459 Mich at 354-355. Here, state and federal officers swear an oath of office.

In sum, contrary to the majority's conclusion that defendants were not "public officers" for purposes of misconduct in office, the six factors set forth in *Coutu* indicate that defendants were public officers for purposes of the misconduct in office offense and I would therefore conclude that the trial court did not abuse its discretion in denying defendants' motions to dismiss and motions for a directed verdict.[1] Having concluded that defendants qualified as "public officers," I would proceed to address defendants' remaining arguments as follows:

## II. SUFFICIENCY OF THE EVIDENCE

Defendants argue that, even if they were public officials, there was insufficient evidence to show that they acted with corrupt intent, a necessary element of misconduct in office.

---

[1] Defendant Nicholson, contends that he does not meet the statutory definition of a police officer or law enforcement officer under the version of MCL 28.602(*l*), a provision of the Michigan Commission on Law Enforcement Standards Act, MCL 28.601 *et seq*., or the definition of "public officer" under MCL 15.181(e), which is a part of the Incompatible Public Offices Act, MCL 15.181 *et seq*. However, there is no indication that the Legislature intended these acts to define the term "public officer" for purposes of the common-law offense of misconduct in office. Rather, as discussed above, our Supreme Court has set forth a five-part test to determine whether someone is a public officer for purposes of misconduct in office. Thus, defendant Nicholson's argument that these statutes control lacks merit.

When reviewing a challenge to the sufficiency of the evidence, this Court reviews "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Any conflicting evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). Questions of credibility are left to the trier of fact and will not be resolved anew by this Court. *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

As stated above, "[T]he elements of the common-law offense of misconduct in office are (1) the person must be a public officer, (2) the conduct must be in the exercise of the duties of the office or done under the color of the office, (3) the acts were malfeasance or misfeasance, and (4) the acts must be corrupt behavior." *Carlin*, 239 Mich App at 64. Defendants challenge the sufficiency of the evidence with respect to the fourth element. This Court has clarified the meaning of corrupt behavior:

> "Corruption" in this context means a "sense of depravity, perversion or taint." [Perkins & Boyce, Criminal Law (3d ed), p] 542. "Depravity" is defined as "the state of being depraved" and "depraved" is defined as "morally corrupt or perverted." *Random House Webster's College Dictionary* (1997). "Perversion" is "the act of perverting," and the term "perverted" includes in its definition "misguided; distorted; misinterpreted" and "turned from what is considered right or true." *Id*. The definition of "taint" includes "a trace of something bad or offensive." *Id*. *Pursuant to the definitions, a corrupt intent can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer.* See also Perkins & Boyce, supra at 542 ("It is *corrupt* for an officer purposely to violate the duties of his office."). [*People v Coutu (On Remand) (Coutu II)*, 235 Mich App 695, 706-707; 599 NW2d 556 (1999) (First emphasis added).]

Acts are sufficient to sustain the charge of misconduct in office if they demonstrate a tainted or perverse use of a public officer's powers and privileges or demonstrate a perversion of the trust placed in the officer by the people of the state. *Id*. at 707.

Defendant Bruce asserts that appropriating a stool for personal use during the execution of a search warrant is insufficient to constitute corrupt behavior because this Court has upheld convictions for misconduct in office in instances that he characterizes as being more serious than his misconduct. But there is no requirement that an act be sufficiently "serious," only that it demonstrate corrupt behavior. Defendant Bruce's appropriation of a stool for his personal use during the execution of the search warrant demonstrates "purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer." *Coutu II*, 235 Mich App at 706. Indeed, seizing a citizen's private property during the execution of a search warrant and appropriating it for personal use is a perversion of the trust placed in law enforcement officers to execute their duties in accordance with the law. For the same reason, defendant Nicholson's appropriation of the thermometer also demonstrates corrupt behavior. This is true

despite defendant Nicholson's contention that another trooper originally presented the thermometer to him and he believed it to have no significant value. Indeed, defendant Nicholson even admitted that he knew not to take anything from the home even if it was trash. In short, there was sufficient evidence to demonstrate that defendants' acts constituted corrupt behavior that satisfied the fourth element of misconduct in office.

## III. ENTRAPMENT BY ESTOPPEL (DOCKET NO. 331233)

In Docket No. 331233, defendant Nicholson moved in the trial court to hold an evidentiary hearing on his defense of entrapment by estoppel. Defendant Nicholson argues that the trial court found that he sustained his burden of proof on all the elements of the defense, but submitted the issue to the jury instead of dismissing the case. Defendant Nicholson argues that this amounted to error because entrapment by estoppel is a question of law that must be decided by the court and is not a question of fact for the jury.

Whether entrapment occurred is a question of law reviewed de novo. *People v Fryda*, 288 Mich App 446, 456; 793 NW2d 712 (2010). The trial court must make specific findings regarding entrapment that this Court reviews for clear error, which occurs if this Court is left with a firm conviction that a mistake was made. *Id*.

If defendant demonstrates an error, under the harmless error test "preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26. "[T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Id*. at 495.

The doctrine of entrapment by estoppel precludes prosecution if a defendant can establish the following elements:

(1) that a government official advised the defendant that certain illegal conduct was legal, (2) that the defendant actually relied on the government official's statements, (3) that the defendant's reliance was reasonable and in good faith given the identity of the government official, the point of law represented, and the substance of the official's statements, and (4) that, given the defendant's reliance, prosecution would be unfair. [*People v Pierce*, 272 Mich App 394, 399-400; 725 NW2d 691 (2006).]

"When a defendant claims entrapment, including entrapment by estoppel, the proper procedure is for the trial court to hold an evidentiary hearing, at which the defendant bears the burden of proving entrapment by a preponderance of the evidence." *Id*. at 400. Entrapment, including entrapment by estoppel, is "a question of law for the trial court to decide, not a question of fact for the jury to resolve." *People v Woods*, 241 Mich App 545, 554; 616 NW2d 211 (2000).

Here, defendant Nicholson moved for an evidentiary hearing on entrapment by estoppel. He provided testimony at the hearing that was substantially similar to his trial testimony. In

pertinent part, he testified that, during the search of the home, Trooper Ziecina presented him with the thermometer and suggested that he refurbish it, Trooper Schreiber stated that items not seized would be thrown away, and he looked at the other officers present to gauge if it was acceptable for him to take the thermometer. After listening to the testimony, the court ruled:

> When I look at the totality of the circumstances, the statements made that he could make something nice out of it suggesting to the Court at least that they were suggesting that he could take it with him, that it was just going to be trash. These are State Police officers making these statements. It appears that it was an old, rusty thermometer. In good faith he thought if they don't have a problem with it and it's just going to be thrown out, that he could do it. I'll allow the estoppel – entrapment by estoppel . . . as to that.

But defense counsel inquired if the court's ruling applied to both counts or only to the larceny count, and the court responded that it only applied to the larceny count. Defense counsel asserted that the ruling on entrapment should apply to both counts, and that the court should dismiss both charges. However, the prosecutor interjected that the court could not dismiss the charges because of entrapment by estoppel. The court agreed with the prosecutor stating, "I totally agree with that. No. This is just a defense that he can raise at the time of – the time of trial." The court expressed that it would provide jury instructions related to entrapment by estoppel for both counts. On the first day of trial, defendant Nicholson moved to dismiss the case because caselaw provides that entrapment is a question of law for the court to decide, and he asserted that the court had determined that the entrapment defense applied at the evidentiary hearing. However, the court denied the motion explaining, "I said you could raise it as a defense and argue it to the jury."

Defendant Nicholson is correct that the trial court erred in presenting the entrapment defense to the jury because entrapment by estoppel is "a question of law for the trial court to decide, not a question of fact for the jury to resolve." *Woods*, 241 Mich App at 554. Nonetheless, the trial court's error was harmless and cannot warrant relief because defendant Nicholson was not entitled to the defense of entrapment by estoppel.

Entrapment by estoppel "should be utilized only where an earnest, law-abiding citizen attempts in good faith to comply with the law by consulting an appropriate government official, but unfortunately receives misinformation." *Id*. at 560. Defendant Nicholson cannot avail himself of the entrapment by estoppel defense for three reasons: first, by virtue of his position and experience, he knew or should have known better than to take any item for his own use during the execution of a search warrant. If a "citizen *knows or should know better*, but attempts to seek immunity by claiming reliance on misinformation obtained from a government employee, prosecution is not unfair and estoppel by entrapment should have no application." *Id*. (emphasis added). Defendant Nicholson was a border patrol agent, but he also testified that he had previously been a police officer in Maine and received training about when it was appropriate to seize personal property. Therefore, he cannot meet the fourth element of the defense because prosecution would not be unfair since he knew or should have known better than to take the thermometer because of his law-enforcement training. Second, for the same reason, defendant Nicholson cannot satisfy the third element; his reliance on any statement or implication that it was legal to take the thermometer could not be reasonable and in good faith

-8-

because of his own experience and training as a police officer. Third, he cannot satisfy the first element because no government official advised him that taking the thermometer was legal. Indeed, he agreed that no one specifically told him he could take the thermometer and that he assumed he could. Thus, even crediting defendant Nicholson's testimony, there was no affirmative representation that he could take the thermometer, let alone a representation that it was legal to do so. Instead, as plaintiff argues, the circumstances merely suggested that the other officers tacitly condoned taking the thermometer. Thus, defendant Nicholson was not entitled to the entrapment by estoppel defense.

Finally, defendant Nicholson is incorrect when he argues that the trial court determined that he was entrapped and entitled to dismissal of the charges. It is clear from the evidentiary hearing that the trial court was under the misapprehension that entrapment by estoppel was an issue of fact for the jury and that it was the court's role to determine whether to permit Nicholson to present the defense. Indeed, the court stated that it would "allow" entrapment by estoppel, and later stated that it was a defense to raise at trial for which it could provide jury instructions. Further, when defendant Nicholson alleged entitlement to dismissal based on the court's supposed finding of entrapment at the evidentiary hearing, the trial court denied it explaining, "I said you could raise it as a defense and argue it to the jury." Thus, it is clear that the trial court did not intend its ruling to operate as a determination that defendant was entrapped, but only as a determination that he was entitled to raise that defense for the jury to decide at trial.

In sum, the trial court erred by allowing the jury to decide the issue of entrapment by estoppel, which is a matter of law for the court to decide, but the error was harmless because defendant did not demonstrate that he was entitled to that defense. Further, defendant Nicholson's assertion that the trial court determined that he was entrapped is erroneous because the court merely determined that he was entitled to argue the defense to the jury. I would therefore conclude that defendant Nicholson is not entitled to relief on this basis.

## IV. CONCLUSION

In conclusion, I disagree with the majority's interpretation of "public officer" for purposes of misconduct in office. I would hold that "public officer" includes federal agents when those agents are acting under the color of state law pursuant to a state statute in situations such as the joint task force that executed the warrant in this case. Accordingly, I would conclude that the trial court did not abuse its discretion in denying the motion to dismiss and the motion for a directed verdict. I would also affirm defendants' convictions where there was sufficient evidence to support defendants' convictions and where defendant Nicholson did not demonstrate that he was entitled to the entrapment by estoppel defense.

/s/ Stephen L. Borrello