# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

JAMES AMSDILL,

Defendant-Appellee.

UNPUBLISHED
November 9, 2017

No. 334572
St. Clair Circuit Court
LC No. 13-000170-FH

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

The circuit court has twice dismissed charges against defendant stemming from patient-to-patient sales of marijuana at three medical marijuana dispensaries owned and operated by defendant and his wife, Debra Amsdill. The circuit court first ruled that defendant was not on notice that his conduct was illegal and that *Michigan v McQueen*, 493 Mich 135; 828 NW2d 644 (2013) (*McQueen II*), could not be applied retroactively. We reversed. See *People v Amsdill*, unpublished opinion per curiam of the Court of Appeals, issued December 2, 2014 (Docket No. 317875) (*Amsdill I*). On remand, the circuit court again dismissed the charges against defendant, but this time based on the entrapment by estoppel doctrine. We again reverse.

## I. BACKGROUND

Defendant owns a chain of medical marijuana dispensaries named Blue Water Compassion Center (BWCC) located in Kimball Township, St. Clair County; Worth Township, Sanilac County; and Richville, Tuscola County. On four dates in December 2011, an undercover officer made controlled purchases of marijuana at BWCC. To accomplish the sales, the officer became a BWCC "member" by paying a $15 fee. The officer showed a false driver's license and medical marijuana card. The card identified the officer's caregiver as "Shannon Sims." Despite that his caregiver was not a BWCC employee, defendant's employees sold the officer marijuana. The state police then secured a search warrant for the dispensaries and defendant's home. Defendant was actually incarcerated on unrelated charges at the time of the controlled buys and execution of the search warrant. However, recorded jailhouse telephone conversations established that he remained in control of his business despite his absence.

In an amended felony complaint, the prosecution charged defendant for offenses occurring between June 2011 and March 31, 2012. Specifically, defendant stood accused of conducting a criminal enterprise, MCL 750.159i(1), and conspiracy to deliver or manufacture

-1-

marijuana, MCL 750.157a; MCL 333.7401(2)(d)(*iii*). The district court bound defendant over for trial as charged. On July 30, 2013, the circuit court dismissed the charges against defendant. *McQueen II*, which was only decided after the charges were levied, held that individuals who sell, transfer, or deliver marijuana to another person without being connected through the state registry were not entitled to the immunities set forth in the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. The circuit court found that

> a person of ordinary intelligence would *not* have concluded, prior to *McQueen*, that the MMMA required *a* registered qualifying patient and *a* registered primary caregiver . . . to be connected through the State's registration process, in order for the caregiver to assist the patient and receive compensation. . . .
>
> Defendants could not have been on notice that the Michigan Supreme Court would interpret the MMMA as it did. Its holding was not foreseeable. Applying the Court's interpretation of the Act to these defendants, making the conduct in which they were allegedly involved illegal, operates as an *ex post facto* law in violation of their due process rights.

As noted, this Court reversed that ruling. In *People v Johnson*, 302 Mich App 450; 838 NW2d 889 (2013), this Court determined that *McQueen II* was entitled to full retroactive application. As such, defendant was not entitled to immunity under the MMMA. See *Amsdill I*, slip op at 4.

In his earlier motion to dismiss the charges, defendant had also cited the doctrine of entrapment by estoppel, but the circuit court did not reach it. On remand, the circuit court revived the motion (as well as others not at issue here) and conducted a four-day evidentiary hearing. At the hearing, defendant testified that he helped draft the medical marijuana ordinance for Kimball Township, which was passed on December 7, 2010. Defendant asserted that he relied on the ordinance and statements by township officials in operating his Kimball Township dispensary from December 2010 to August 2011. Defendant also claimed that in July 2010, William Gray, the director of the Sanilac County Drug Task Force, told him that he felt patient-to-patient sales were legal. Defendant purported to rely on this statement in operating his Worth Township facility. And defendant indicated that he relied on the Kimball Township ordinance and Gray's statement in opening the Richville dispensary.

On cross-examination, defendant admitted that the minutes of the February 2010 meeting of the Kimball Township planning commission (KTPC) note that defendant's own attorney called the MMMA unclear and stated, "You can get an opinion on both sides of that issue whether it is legal to sell to anyone who has a card." Defendant conceded that the ordinance as ultimately passed allowed sales but did not specifically refer to patient-to-patient sales. Moreover, defendant acknowledged that Kimball Township imposed a moratorium on medical marijuana dispensaries from April through October 2010 and he opened and operated his dispensary anyway. In relation to his reliance on the Kimball Township ordinance and a Sanilac County police officer's statement in operating his dispensaries in other locations, defendant indicated that he understood that each local jurisdiction had its own authority and rules.

Finally, defendant attempted to establish that he was unaware of this Court's initial ruling that patient-to-patient sales are illegal in *Michigan v McQueen*, 293 Mich App 644; 811 NW2d 513 (2011) (*McQueen I*), because he was then incarcerated on unrelated charges. However, defendant contradicted his own testimony by admitting that the prison doctor advised him of the opinion and that he thereafter called his wife to discuss the effect of the ruling on their business.

Officer Gray took the stand and denied telling defendant that he felt patient-to-patient sales of marijuana were legal. Rather, Gray asserted, he told defendant the exact opposite. Gray also testified that he told defendant that one caregiver could not provide marijuana to another caregiver's patient. Gray continued that defendant seemed to understand and acknowledged that patient-to-patient transfers would be illegal. Moreover, Gray toured the Worth Township facility on December 21, 2011, and advised Debra that the "grow area" did not hold up to legal scrutiny because the individual caregivers' plants were not separated and secured.

The prosecution also presented several recorded jailhouse telephone calls between defendant and his wife, other family members, and employees during the timeframe of the amended complaint. During these conversations, defendant repeatedly directed that more products be made for sale and that the dispensaries remain open or be reopened.

The circuit court again dismissed the charges against defendant. The court found reasonable defendant's reliance on Gray's statement that patient-to-patient sales were legal, even after this Court's 2011 opinion in *McQueen I*, because "there is no evidence that [defendant] understood its implications." Defendant's good-faith and reasonable reliance on Gray's statement satisfied the elements of entrapment by estoppel, the court concluded. The prosecution now appeals.

## II. LEGAL PRINCIPLES

Whether entrapment occurred under the facts of a case is a question of law that is reviewed de novo. *People v Fyda*, 288 Mich App 446, 456; 793 NW2d 712 (2010). The circuit court's factual findings regarding entrapment are reviewed for clear error. *Id.* We will find clear error if we are "left with a firm conviction that a mistake was made." *Id.*

"[E]ntrapment by estoppel is . . . a variation on ordinary entrapment." *People v Woods*, 241 Mich App 545, 555; 616 NW2d 211 (2000). "Both defenses excuse criminal conduct where a government agent has improperly instigated or encouraged the conduct." *Id.* "When a defendant claims entrapment, including entrapment by estoppel, the proper procedure is for the trial court to hold an evidentiary hearing, at which the defendant bears the burden of proving entrapment by a preponderance of the evidence." *People v Pierce*, 272 Mich App 394, 400; 725 NW2d 691 (2006). "Ultimately, in Michigan, entrapment is a question of law for the trial court to decide, not a question of fact for the jury to resolve." *Woods*, 241 Mich App at 554.

> The doctrine of entrapment by estoppel applies to preclude prosecution when a defendant establishes by a preponderance of the evidence (1) that a government official advised the defendant that certain illegal conduct was legal, (2) that the defendant actually relied on the government official's statements, (3) that the defendant's reliance was reasonable and in good faith given the identity

of the government official, the point of law represented, and the substance of the official's statements, and (4) that, given the defendant's reliance, prosecution would be unfair. [*Pierce*, 272 Mich App at 399-400.]

"The defense is, in essence, a significant exception to the basic legal maxim that ignorance of the law is no excuse." *Woods*, 241 Mich App at 560.

> [T]he defense should be utilized only where an earnest, law-abiding citizen attempts in good faith to comply with the law by consulting an appropriate government official, but unfortunately receives misinformation. These are the circumstances where prosecution would be so unfair as to violate the citizen's right to due process. However, when the citizen knows or should know better, but attempts to seek immunity by claiming reliance on misinformation obtained from a government employee, prosecution is not unfair and [the doctrine of entrapment by estoppel] should have no application. [*Id*. (citation omitted).]

## III. ANALYSIS

The prosecutor first contends that defendant failed to establish the first element of his entrapment defense: "that a government official advised the defendant that certain illegal conduct was legal." *Pierce*, 272 Mich App at 399. The parties presented conflicting evidence in this regard. Defendant testified that Gray told him that he felt patient-to-patient sales were legal; Gray claimed he told defendant that such sales were illegal. The circuit court deemed defendant's testimony more credible. We may not interfere with that credibility assessment. See *People v Martin*, 199 Mich App 124, 125; 501 NW2d 198 (1993) (where the record contained widely divergent testimony regarding an entrapment claim, this Court declined to substitute its judgment for that of the trial court regarding which testimony to believe).

Nonetheless, we agree with the prosecutor that the circuit court clearly erred in finding that defendant established the remaining elements of his entrapment by estoppel defense.

The evidence does not establish that "defendant actually relied on [Gray's] statements." *Pierce*, 272 Mich App at 399. According to defendant, Gray told him in July 2010 that patient-to-patient sales were legal. But defendant testified that his business was already engaged in patient-to-patient sales before July 2010. Defendant admitted that patient-to-patient sales occurred at the Kimball Township dispensary beginning in April 2010. And defendant opened the Worth Township dispensary that June. Although the conduct subject to the criminal complaint did not begin until June 2011, defendant's illegal conduct even before he spoke to Gray evidences that he did not rely on Gray's statement any time thereafter. Defendant has presented no evidence suggesting that he would have discontinued the patient-to-patient sales *that were already occurring* if Gray had not made the alleged statement regarding the legality of such sales. Defendant has thus failed to establish the element of actual reliance.

Even if defendant actually relied on Gray's statement, defendant has not demonstrated that his "reliance was reasonable and in good faith given the identity of the government official, the point of law represented, and the substance of the official's statements." *Id*. Gray was the director of the Sanilac County Drug Task Force. As such, Gray had jurisdiction only over the

dispensary in Worth Township, which is located in Sanilac County, and not the other two facilities. Defendant's alleged reliance on Gray's statement in operating all three dispensaries was not reasonable.

Defendant's alleged reliance was also unreasonable given the point of law represented and his representation of Gray's statement. Defendant attended a KTPC meeting in February 2010 during which his attorney stated that the MMMA was unclear and that "[y]ou can get an opinion on both sides of that issue whether it is legal to sell to anyone who has a card." In addition, defendant testified that he has read the MMMA "a couple thousand times," studying the act in preparation of opening BWCC. Indeed, defendant testified that the members of the KTPC asked defendant to help write a medical marijuana ordinance and that he did so; according to defendant, the KTPC members said, "we don't know what we're really doing, but you do." The issue is therefore not whether defendant's ignorance of the law should be excused—defendant's own testimony established that he was *not* ignorant of the law.

No MMMA provision states that marijuana dispensaries are legal business entities. See *Johnson*, 302 Mich App at 463. This Court and our Supreme Court have each recognized that the MMMA does not authorize patient-to-patient sales of marijuana. See *McQueen II*, 493 Mich at 141-142; *McQueen I*, 293 Mich App at 648, 663, 668, 670. Defendant has failed to identify any provision of the MMMA that would justify his belief that his conduct was legal. Given defendant's admitted knowledge of the MMMA, which does not authorize marijuana dispensaries or patient-to-patient sales of marijuana, and given his own attorney's statement in defendant's presence at a public forum that the law is unclear regarding the legality of sales to anyone who has a marijuana card, defendant could not have reasonably relied on Gray's alleged statement that patient-to-patient sales of marijuana are legal.

This conclusion is reinforced by the issuance of *McQueen I* on August 23, 2011, which falls within the time period of the alleged offenses in this case. Although *McQueen I* made clear that patient-to-patient sales were not legal, the circuit court in this case found that defendant, who was incarcerated when *McQueen I* was issued, did not learn about the details or implications of *McQueen I*. The transcripts of defendant's recorded prison telephone conversations reflect that defendant understood the implication of *McQueen I*. The court's factual finding in this regard was clearly erroneous.

As noted, defendant testified that a prison doctor told him about *McQueen I*. Defendant called his wife, who stated that she was working with Gray through their attorney on the matter. During an August 31, 2011 call with a person named Dennis, defendant stated, "I think we're gonna stay in business the way Deb sounds, so. You know, it's gonna be awhile before this Supreme Court ruling. Now that'll take years. . . . So, we should be able to stay in business. . . ." During a September 4 call, Debra told defendant that she had "been kinda busy with the ruling and the law and the thing and those people and if we're open, if we're not open. Ah, Big Daddy's been (unintelligible) Rick and Stef and Danny and a couple caregivers got charged from that sting back in January." On September 14, defendant told Debra to work on advertising to bring people into the dispensaries and that he hoped she was "doing candy bars and all kinds of things[.]" Debra responded, "Kelly put in her weeks' notice[]" and "got squirrely after the ruling. . . ." These recorded conversations make it abundantly clear that defendant was aware of the implication of *McQueen I*. He knew that one of his employees

-5-

resigned because of the ruling, that there were issues about whether BWCC could stay in business, and that Debra planned to keep operating the business pending the Michigan Supreme Court ruling. Despite knowing that the legality of his business was at least called into question by *McQueen I*, defendant continued to give instructions regarding the management of his business.[1] Given his knowledge, defendant's purported reliance on Gray's alleged statement regarding the legality of patient-to-patient sales was not reasonable.

Further supporting the conclusion that defendant's reliance was not reasonable is the fact that defendant continued to operate BWCC even after the police raided the dispensaries and defendant's home on December 9, 2011. In recorded telephone conversations on that date, defendant made numerous incriminating statements, expressing his joy that the police failed to find certain unspecified items and suggesting that these items had been purposefully hidden. Defendant directed Debra to quickly reopen and to invite the media. In another conversation, defendant berated Debra for not replenishing their stock of marijuana butter after selling out. Defendant's daughter told him about an article saying "that the State Attorney General Bill Schuette has called the dispensaries for profit drug houses that are out of control[]" and that "[i]t's filled with loopholes and unclear language." In later conversations, defendant further pressed Debra about reopening certain parts of the dispensaries and gave multiple instructions about how to operate the business and bring in more money. Therefore, despite knowing after the December 9, 2011 police raid that the Michigan State Police and the Attorney General did not view BWCC as a legal business entity, defendant gave instructions to continue operations. At that point, defendant's reliance on any statement by Gray was unreasonable.

For the same reasons that defendant's alleged reliance on Gray's purported statement was not reasonable, defendant has also failed to establish that prosecuting him is unfair. As this Court explained in *Woods*, 241 Mich App at 560, the entrapment by estoppel "defense should be utilized only where an earnest, law-abiding citizen attempts in good faith to comply with the law by consulting an appropriate government official, but unfortunately receives misinformation." If "the citizen knows or should know better, but attempts to seek immunity by claiming reliance on misinformation obtained from a government employee, prosecution is not unfair and [the doctrine of entrapment by estoppel] should have no application." *Id*. The record does not reflect the conduct of an earnest, law-abiding citizen attempting in good faith to comply with the law. Rather, the evidence, including defendant's own statements and testimony, indicates that he knew or should have known better. Defendant had read the MMMA numerous times, was informed by his own attorney in public that the legality of sales was unclear, was notified of the implication of the *McQueen I* decision, and learned that the Michigan State Police and the Attorney General did not view the dispensaries as legal entities. Even so defendant continued to his operations. Prosecution is more than fair under the circumstances.

---

[1] For example, upon learning that membership was down about 30% and that it had "been tough for a couple weeks[]" but that people were starting to come back, defendant directed Debra to charge for a previously complementary item and to seek donations on the Internet. Defendant also suggested that they start shipping their products.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher