*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THEODORE JOSEPH VISNER,

        Defendant-Appellant.

UNPUBLISHED
July 16, 2020

No. 347028
Bay Circuit Court
LC No. 17-010630-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THEODORE JOSEPH VISNER,

        Defendant-Appellant.

No. 347083
Bay Circuit Court
LC No. 17-010631-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THEODORE JOSEPH VISNER,

        Defendant-Appellant.

No. 347084
Bay Circuit Court
LC No. 17-010632-FH

---

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

-1-

The trial court joined the offenses charged in each of the lower court files for trial. The jury convicted defendant in each of the three cases of two counts of delivery of a controlled substance (marijuana), MCL 333.7401(2)(d)(*iii*), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of two years for each of the six felony-firearm convictions and applied 216 days of jail credit to each felony-firearm conviction. The court ordered defendant to pay a fine of $100 for each of the six drug convictions. Defendant appeals his convictions. We affirm.

On August 30, September 6, and September 19, 2017, undercover police officers made controlled buys of marijuana from defendant at 856 W. Cody Esley Road in Mt. Forest Township. The officers believed that defendant was operating an unlicensed marijuana dispensary at this residence. The two undercover officers, Trooper Kyle Kehn and Detective David Hughes, presented defendant patient medical marijuana cards that had been issued in fictious names for investigative purposes.[1] The front of the card indicated that the patient was authorized to possess plants, and the back of the card stated "no caregiver." On each visit, defendant sold marijuana to one or both of the purported patients and was observed carrying a visible black semiautomatic handgun.

At trial, defendant was self-represented with standby counsel. Defendant did not present any witnesses. His theory, as developed through the cross-examination of witnesses and through his opening and closing statements, was that he acted "in compliance with the laws of the State of Michigan" when he provided marijuana to the undercover officers because their patient medical marijuana cards indicated that they did not have a caregiver. Defendant offered into evidence his patient medical marijuana card. No evidence was presented that defendant had a caregiver medical marijuana card.

## I. ENTRAPMENT BY ESTOPPEL

On appeal, defendant first argues that he established the elements of the defense of entrapment by estoppel and that the trial court should have dismissed the charges against him or held an evidentiary hearing with respect to the defense.[2]

---

[1] The term "medical marijuana card" refers to a "registry identification card" as that term is used in the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. The MMMA uses the variant "marihuana." We will use the common spelling "marijuana" unless quoting from the statute. The MMMA defines "registry identification card" as "a document issued by the department that identifies a person as a registered qualifying patient or registered primary caregiver." MCL 333.26423(j). The "department" is "the department of licensing and regulatory affairs." MCL 333.26423(c).

[2] Before the trial court, defendant filed a motion to dismiss on ordinary entrapment grounds. He failed to preserve his claim of entrapment by estoppel because he did not cite that doctrine in the trial court. See *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Accordingly, our review is for plain error. See *People v Carines*, 460 Mich 750, 763; 597 NW2dd 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have

This Court has recognized that an entrapment by estoppel defense is similar to a traditional entrapment defense. *People v Woods*, 241 Mich App 545, 548; 616 NW2d 211 (2000). Entrapment by estoppel exists "[w]hen a citizen reasonably and in good faith relies on a government agent's representation that the conduct in question is legal." *Id.* at 548-549. Under such circumstances, "basic principles of due process should preclude prosecution." *Id.* Like traditional entrapment, it is the defendant's burden to establish by a preponderance of the evidence that he is entitled to the defense. *Id.* at 558.

In *Woods*, this Court adopted a four-part test to determine when an entrapment by estoppel defense applies, under which the defendant must establish by a preponderance of the evidence that:

> "(1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement." [*Id.* at 558-560, quoting *United States v West Indies Transp, Inc*, 127 F 3d 299, 313 (CA 3, 1997).]

In addition to adopting the elements set forth in the *West Indies* test above, the Court included in that test the additional element that "given the defendant's reliance, the prosecution would be unfair." *Woods*, 241 Mich App at 559.

In this case, defendant was not entitled to an entrapment by estoppel defense for two reasons. First, defendant was unaware that Trooper Kehn and Detective Hughes were government agents. The officers were undercover during each of the transactions that occurred; thus, it cannot be said that defendant believed he was acting consistent with a governmental agent's representation concerning the law. The test for entrapment by estoppel requires that the defendant rely in good faith on a government official's statement "in light of the *identity* of the government official, the point of law represented, and the substance of the official's statement." *Woods*, 241 Mich App at 558 (emphasis added). Second, entrapment by estoppel requires a "government agent's representation that the conduct in question is legal," *Woods*, 241 Mich App at 548-549; however, there was no such representation made by Kehn or Hughes.

In sum, defendant was unaware that Trooper Kehn and Detective Hughes were government agents, and no statements were made to defendant assuring him that his conduct was legal. Therefore, defendant was not entitled to dismissal of his charges.[3]

---

occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* The last requirement mandates a showing of prejudice, meaning that the error must have affected the outcome of the proceedings. *Id.*

[3] Defendant also asserts that the court should have held an evidentiary hearing with respect to his claim of entrapment by estoppel. This argument is without merit as defendant never asserted the doctrine of entrapment by estoppel in the trial court.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the testimony of Trooper Kehn and Detective Hughes that they observed a semiautomatic handgun on defendant's belt was insufficient to support a finding that the item they observed was in fact a "firearm" because the item was not recovered and tested.[4]

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (citation omitted); see MCL 750.227b(1). A "firearm" is defined for purposes of the statute as "any weapon which will, is designed to, or may readily be converted to expel a projectile by action of an explosive." MCL 750.222(e).[5] Defendant only challenges the possession of a weapon requirement for each of the felony-firearm convictions.

The fact that the firearm was not recovered says little, if anything, about whether defendant possessed a firearm when he delivered marijuana. Where the conviction of an offense requires proof beyond a reasonable doubt that a defendant possessed a firearm, this element may be proven without the actual admission into evidence of the weapon. *People v Hayden*, 132 Mich App 273, 296; 348 NW2d 672 (1984). In this case, the two undercover officers each testified to observing defendant carrying a semiautomatic handgun on his person during each of the controlled drug purchases. In addition, Detective Hughes wore a recording device during the September 6, 2017 transaction. The prosecution admitted photos obtained from the recording device, and Detective Hughes identified a photograph of the weapon carried on defendant's hip during the controlled buy on September 6, 2017. The evidence was sufficient to support the jury's finding that defendant possessed a firearm during each of the crimes.

## III. § 8 DEFENSE

Defendant next argues that the trial court erred by finding that he was not entitled to assert a defense under § 8 of the MMMA.[6] "[T]he § 8 defense cannot be asserted for the first time at trial, but must be raised in a pretrial motion for an evidentiary hearing." *People v Kolanek*, 491

---

[4] We review de novo a defendant's challenge to the sufficiency of the evidence to support his or her conviction. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). In reviewing a challenge to the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "[A] reviewing court is required to draw all reasonable inferences and make credibility determinations in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

[5] Defendant cites the definition of "firearm" in MCL 8.3t. The applicable definition of "firearm" for purposes of MCL 750.227b is found in MCL 750.222(e), not MCL 8.3t.

[6] A trial court's interpretation and application of the MMMA is reviewed de novo. *People v Anderson (On Remand)*, 298 Mich App 10, 14-15; 825 NW2d 641 (2012).

Mich 382, 411; 817 NW2d 528 (2012). In this case, defendant only raised a § 8 defense at trial when he requested the court to instruct the jury on the defense. He did not file any pretrial motion related to § 8 of the MMMA and, therefore, the trial court properly could have precluded evidence related to the affirmative defense trial on this ground alone.

Nonetheless, the trial court properly found that defendant failed to establish that he was entitled to assert the defense. "Section 8(a) of the MMMA provides any patient or primary caregiver—regardless of registration with the state—with the ability to assert an affirmative defense to a marijuana-related offense." *People Hartwick*, 498 Mich 192, 226; 870 NW2d 37 (2015). MCL 333.26428 provides the "§ 8 defense" and states in relevant part as follows:

> (a) Except as provided in section 7(b), a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

> (1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

> (2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

> (3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

"A defendant seeking to assert the MMMA's statutory affirmative defense must present prima facie evidence for each element of § 8(a)." *Hartwick*, 498 Mich at 228. The defendant must also establish that he or she is either a " 'patient' or 'primary caregiver' as those terms are defined, and limited, under the MMMA and used in § 8." *Bylsma*, 315 Mich App at 386. A primary caregiver is someone who is at least 21 years old, and "who has agreed to assist with a patient's medical use of marihuana." MCL 333.26423(k). A patient can have only one primary caregiver, and a primary caregiver may assist no more than five qualifying patients. MCL 333.26426(d); *Bylsma*, 315 Mich App at 386. This Court has explained that there is

> no basis for concluding that a defendant may assert a § 8 defense in a prosecution for conduct by which he possessed, cultivated, manufactured, delivered, sold, or transferred marijuana to an individual who serves as a primary caregiver for other

patients or to a patient whom he did not serve as a primary caregiver. Stated differently, a defendant may not raise a § 8 defense in a prosecution for patient-to-patient transactions involving marijuana, caregiver-to-caregiver transactions involving marijuana, transactions that do not involve a patient for whom the defendant serves as a primary caregiver, and transactions involving marijuana that do not involve the defendant's own primary caregiver, as "patient" and "primary caregiver" are defined and expressly limited under the act. Only conduct directly arising from the traditional patient and primary-caregiver relationship is subject to an affirmative defense under § 8. [*Bylsma*. 315 Mich App at 384.]

Here, there was no evidence that defendant qualified as a "primary caregiver" under the MMMA, and therefore, a § 8 defense was not available to him. According to the evidence at trial, defendant sold marijuana to the two undercover officers, both of whom showed defendant a medical marijuana card. The mere presentation of medical marijuana cards by these individuals did not presumptively entitle defendant to a § 8 defense. See *Hartwic*k, 498 Mich at 203, 232, 234, 237. There is no evidence that defendant served as the primary caregiver for either of the undercover officers to whom he sold marijuana. To the contrary, the undercover officer's patient medical marijuana cards stated that they did not have a primary caregiver and, therefore, served as their own caregivers. *Hartwick*, 498 Mich at 205 n 14; *Bylsma*, 315 Mich App at 388, 390. Because an individual is not permitted to have more than one caregiver, defendant could not have been a primary caregiver for patients serving as their own caregiver. *Bylsm*a, 315 Mich App at 388, 390. None of defendant's charged conduct arose from the accepted patient and primary caregiver relationship. Accordingly, a § 8 defense was not available to defendant at trial because he could not demonstrate that he qualified as a primary caregiver for the fictitious patients.

Defendant also argues that he was deprived of a defense when the trial court granted the prosecutor's request for a nonstandard jury instruction. We conclude that the trial court did not abuse its discretion by instructing the jury that "[a] registered Michigan Medical Marijuana primary caregiver may only provide marijuana to the five qualifying patients for whom the state has given the primary caregiver permission to provide marijuana."[7] The instruction comported with MCL 333.26462(d)[8] and was applicable in light of defendant's theory that, because the

---

[7] A trial court may give additional jury instructions as long as they accurately state the law and are applicable. *Mull v Equitable Life Assur Soc of US*, 196 Mich App 411, 423; 493 NW2d 447 (1992), aff'd 444 Mich 508 (1994). "Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). We review a trial court's determination regarding the applicability of a jury instruction for an abuse of discretion. *People v Craft*, 325 Mich App 598, 604; 927 NW2d 708 (2018).

[8] MCL 333.26462(d) states as follows: "The department shall issue a registry identification card to the primary caregiver, if any, who is named in a qualifying patient's approved application; provided that each qualifying patient can have no more than 1 primary caregiver, and a primary caregiver may assist no more than 5 qualifying patients with their medical use of marihuana."

undercover officers had patient medical marijuana cards, he, as a purported primary caregiver, could provide marijuana to them. An accurate paraphrasing of the statute's language did not infringe upon defendant's right to present a defense. The trial court did not abuse its discretion by granting the prosecutor's request to provide the special jury instruction.

## IV. JURY INSTRUCTION DURING DELIBERATIONS

Defendant argues that the trial court abused its discretion in instructing the jury, in response to its question during deliberations, that patient-to-patient transfer of marijuana is not authorized by the MMMA. The jury asked, "As a medical marijuana patient in 2017 at the time of the controlled buys, can they deliver or distribute marijuana legally?" The court instructed the jury that "[u]nder the circumstances of this case, the ruling of the court is that a person issued a medical marijuana patient card at the time of the occurrences in this case is not authorized under the law to deliver marijuana to another patient."

The MMMA did not create a general right for individuals to use and possess marijuana in Michigan. *Kolanek*, 491 Mich at 394. At the time of the offenses in this case, the possession, manufacture, and delivery of marijuana remained punishable offenses under Michigan law after the enactment of the MMMA. *Id.* The MMMA defined the parameters of legal medical marijuana use, promulgated a scheme for regulating registered patient use and administering the act, and provided for an affirmative defense, as well as penalties for violating the MMMA. *Id.* MCL 333.26427(a) of the MMMA provided that "[t]he medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions of th[e] act."

The evidence presented in this case showed only that defendant had a patient medical marijuana card and that the undercover officers had patient medical marijuana cards. The Supreme Court has held that, under the MMMA, § 4 immunity does not extend to a registered qualifying patient who transfers marijuana to another registered qualifying patient for the transferee's use because the transferor is not engaging in conduct related to marijuana for the purpose of relieving the transferor's own condition or symptoms. *People v McQueen*, 493 Mich 135, 156; 828 NW2d 644 (2013), citing MCL 333.26424(a). See also *People v Green*, 494 Mich 865; 831 NW2d 460 (2013) (the Court of Appeals erred in affirming the trial court's order that granted the defendant's motion to dismiss the charge of delivery of marijuana where the registered qualifying patient transferred marijuana to another registered qualifying patient). Similarly, the § 8 affirmative defense does not extend to a registered qualifying patient who transfers marijuana to another registered qualifying patient. The trial court's instruction to the jury was a direct response to the jury's question and accurately stated the law. The instruction did not direct a verdict of guilty as defendant contends. Defendant has not shown that the trial court abused its discretion.

## V. STANDARD 4 BRIEF

Defendant has raised a number of issues in the statement of questions presented in his Standard 4 brief. However, none of the issues are addressed in the brief. His brief consists of blank pages that contain only headings that are unrelated to the statement of questions presented, or that contain no heading at all. Because defendant's brief consists of a statement of questions presented that are not addressed in the brief, each of defendant's points are abandoned, and we decline to address them. *People v Coy*, 258 Mich App 1, 19-20; 669 NW2d 831 (2003) ("Where

a defendant raises an issue in his statement of questions presented but fails to argue the merits in his brief, the issue is abandoned."). See also *People v Cameron*, 319 Mich App 215, 232; 900 NW2d 658 (2017) (this Court is not required to unravel and elaborate on defendant's arguments and may deem his unsupported arguments abandoned).[9]

Affirmed.

/s/ Michael J. Riordan
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause

---

[9] Defendant's brief contains only one "argument," which is not related to the statement of questions presented. He asserts that "Appellant's convictions must be nullified and vacated because the trial court ignored structural defects in allowing prosecution & trial absent sufficient criminal allegations." However, defendant presents no argument. Rather, he merely presents a recitation of facts relating to the felony complaint and the information. It is unclear what the "structural defects" are that defendant is referring to in the statement of the argument.